The next case called for oral argument is Gregory v. Wilkins. Counsel, whoops, I'm sorry, that's a non-oral case. People versus property. No, it's Gregory v. Wilkins. It is Gregory? Yes. Okay. It's labeled non-oral here. Okay, never mind. I recognize that. Your honors, counsel, may I please report? My name is Andrew Mossman and I'm here on behalf of Appellant L. Vernon Wilkins. This case involves a third party, Susan Gregory, who was granted full parental responsibility in the majority of parenting time, despite the objections of Mr. Wilkins, who is the child's father. The first issue is whether the court earned an awarding Susan Gregory full parental responsibility in the majority of parenting time because the trial court gave no special weights to Mr. Wilkins' fundamental constitutional rights to raise and direct the upbringing of his child. There's a case in the Fifth Appellate District that's directly on point here in marriage and deferral. In that case, the court ended up awarding parental responsibility in parenting time, at that time called custody and visitation, to grandparents. The facts of that are very similar to this case, but we think that it can be distinguished. First, in deferral, father knew that the child resided entirely with grandparents from an early age and consented to it. In our case, Mr. Wilkins was under the impression that the child resided with his mother, excuse me, with her mother and her uncle, and was not aware that the child had been staying with anybody else. Also in deferral, the child had special needs, the court found, requiring stability. There are no such needs in this case. And I think most importantly in that case, the father was granted substantial parenting time, over 10 weeks. In this case, father has very limited parenting time. In fact, it's only one day every other month for a couple hours. So we're asking essentially for the court to overturn the issuance of parental responsibility and parenting time to Susan Gregory. And we're asking that because we don't believe the trial court gave enough weight to Mr. Wilkins in regard to his rights to raise his child and his want to be more part of her life. That's all I have to state, unless I have questions. I don't believe so. Thank you. Counsel. May it please the court, Justice Chapman, Justice Goldenhirsch, and Justice Cates, as well as Closing Counsel Mr. Mossman. I am Heather Dabler. I represent the appellee, Susan Gregory, who was awarded sole decision-making responsibility over this minor child, this little girl, La'Nya. Decision-making responsibility historically in Illinois was termed custody. She was also awarded a majority of the physical custody of the child, which the legislature now has called parenting time. We are asking the court to affirm Judge Cate's decision in its entirety for several reasons. I am glad that Mr. Mossman brought up the Defoe case today because prior to today I did not see it in his brief. But I would like to mention the Defoe case because it is a case of this court, and it is a case that was actually written by Justice Goldenhirsch. Let me interrupt you a second. So are you okay with him bringing up a case that he didn't brief? I don't object to it because I believe that it's in my favor. Okay. No, I was just asking procedurally if you do that, if you want to do that. No, Your Honor. Okay. Thank you. In regard to Justice Goldenhirsch's opinion in Defoe, that case was very, very similar in the case at hand. Specifically, and joined by Justice Chapman, the court has held that Troxell and Lule, which were the two cases, the seminal cases that the appellant relied on, clearly states that those cases are inapplicable in a custody dispute with a third party who virtually raised the child since birth. I did prepare a supplemental statement of facts which very clearly stated that this child was not in the custody of either one of her parents at any time after she was three months old. And I think what's so important, and although Mr. Mossman had indicated this child doesn't have special needs, Rayna had cancer at nine months old, and that is in the record. She was very, very ill. When you're going through the record, my client had picked up the child from her maternal uncle, who initially was given the child by the biological mother. When she was nine months old, my client picked up the child, saw that she wasn't feeling good, took her to her mother, who was a labor and delivery nurse, and said, do you think something's wrong with her? They took her to Cardinal Glennon, immediately diagnosed her with a tumor on her ovary. The physicians had indicated she probably wouldn't have survived the night had she not come there. Father was at the hospital. I'm a mother of three children. I can't imagine going to a hospital, seeing your child in critical condition, and then never having any contact with your child again for four years, which is exactly what Mr. Wilkins did in this case. He came to the hospital while his daughter was critically ill, got into a fight with the biological mother, and basically testified he didn't do anything, come around until the state of Missouri filed an action seeking child support for this child. So I do believe that the Defoe case and the reasonings for the Defoe case are extremely applicable here because even in Defoe, and I acknowledge that there's a well-established presumption that a natural parent should have the care, custody, and control of the child over a third person. However, that presumption is not absolute, but serves as one of several factors used by the court in determining the best interest of the child. Our legislature has set forth numerous factors in 602.5 and 602.7 with regard to the factors that the court is supposed to consider when awarding custody of a child to a party seeking custody. And I think that the court, Judge Keeblin, went through those factors, and even on page 19 of my brief, as the closing arguments were being made at trial, Mr. Wilkins' counsel acknowledged that the father was not requesting primary parenting time given his lack of relationship with his daughter, and to which the court responded, and I quote, and herein lies the problem that she doesn't even know him. This is a child who hasn't had unsupervised time with her biological father with the exception of the three months that he testified he took care of her when she was an infant. My client, Susan Gregory, has been the one to take her to her appointments for her cancer treatment to see Dr. Hughey at Cardinal Glennon. I believe the testimony was initially it was every two weeks, then it was every three weeks, then it was every four weeks, then it was every month, every other month, until this point, she's every six months, she's still going to an oncologist to determine her condition with regard to cancer treatments. My client testified at length as to the amount of extracurricular activities she's enrolled a child in, to the paying for her school tuition at South City School, Zion Lutheran, all of this was with the consent of the mother. Travia Banks, the mother, filed a parenting plan with the court stating that she and Susan Gregory should make decisions for this child and that the child should primarily reside with Susan Gregory and with the biological mother every weekend. Rafael Hall, the maternal uncle who was given the child when she was three months old, filed a parenting plan indicating that he and Susan should make joint decisions for Raynia and Raynia should live with him during the week and with Susan every weekend. Initially, the biological father filed a position statement with the court saying the biological father should make all of the legal decisions for the child but should live with Susan Gregory until such time as he establishes that relationship. So for the biological father to come in here now at this point to say that the court didn't afford him any weight as the biological father, I think is just disingenuous. As the court cited again in the custody of TW, which is a 2006 case, again Justice Goldenhersch, the Illinois Marriage and Dissolution of Marriage Act's requirement that petitioners show that the child is not in the physical custody of one of his or her parents ensured that due process rights of the parents were not violated. In this case, the due process rights of the parents cannot be violated because neither one of the parents had custody, physical custody of the child at any point since she was three months old. I do not think that the biological father can distinguish, well, I just assumed that she was living with her mother. He obviously had no contact with her. He didn't come to see her. He didn't pay any support. So I do think that this court's cases in Ray, the custody of TD, as well as Defoe are directly on point and directly address the issue that we're here on. Let me ask you another issue if I could. I'm sorry. That's okay. What about these fitness findings? Go ahead, Justice Shannon. Thank you. Wait, wait. Well, I was just going to say under Defoe there is no requirement for the court to find unfitness. I agree with you, Your Honor. Do you think it was appropriate that the court did not only find unfitness but did it retroactively? And what do you think, if anything, should we address that or how? Well, again, I did file a motion to strike that portion of the appellant's brief because it wasn't cited in the notice of appeal that September 6th order was not cited. Let's assume that we do address it. Okay. I would say that, in my opinion, that was one of the any other factor under our statute. So when you're looking at the factors under the 602 factors of the IMDMA, the last one, both for allocation of parental responsibilities as well as allocation of parenting time, specifically states the court may consider any other factor that they deem relevant and appropriate in issuing their opinion. In my opinion, the court even wanted to strengthen her order and try to have the father acknowledge that he had no involvement in this child's life for five years and then to come into court and demand that he, all of a sudden, be allocated these responsibilities for a child who, you know, is still seeking cancer treatment, does horseback riding, does extracurriculars. I think the court, while those unfitness factors she found under the Adoption Act, I think it's just supplemental. I don't think it's a substantive part of the order. Is there a concern, though, that that could be used against him in the future without notice, without a hearing, essentially, if there then becomes down the road a custodial issue or an adoption issue? Well, because I don't want the court to consider anything. So, yes, you are absolutely correct. An adoption has been filed. My client is currently prosecuting an adoption in this case and has alleged the parents to be unfit. So I believe that will become an issue, Your Honor. Let's eliminate that for a moment. What I'm concerned about is that the judge incorporated a completely separate statute to make findings in this case. In other words, as you say, the Adoption Act was somehow brought into this without any notice to any party. I mean, this was kind of a delayed finding, as I understand it, from the record. I would agree, Your Honor. The attorney filed his motion to reconsider, and a couple days prior to the hearing, we all received this order in the mail. There was no briefing on this. There was no notice to anybody about these findings. It was from a completely different statute. And not only was it delayed, there were findings that the judge made that would be inconsistent with the father being determined to be unfit. I think there was a statement along the lines that any one of these four parties would be, you know, would be fine to parent the child, which, to me, seems to be an inconsistent statement. And I will tell you, having primarily practiced in family court for the last six years, I personally believe that Judge Keeble's statement that any of these parents would be fine to parent the child was lip service, to try to make the parties feel better, to try and... Well, that's not what you're supposed to put in findings when you record... I understand. Trying to make the parties feel better is not the basis for a legal finding, or should not be. And I would say that prior to trial, the relationships between the parties were very, very different. I think as the court and as the guardian ad litem testified at trial, he was very concerned about Mr. Wolkin's kind of 180 change from his opinion about what's in the best interest of Ray Naya. So that's something I want to bring up. The appellant has stated at length his superior rights, what he believes should happen, but I don't think that the appellant has brought up anything or any factor regarding Ray Naya's best interest. Well, but therein lies a problem with the Adoption Act, best interest. I mean, you don't get to best interest until you find unfitness, and that takes a whole slew of due process issues. So for the courts... Well, under the federal, you do look at best interest. I'm sorry, I'm talking about the Adoption Act. I agree that there's a three-step process in the Adoption Act. Number one is unfitness, number two, is it the best interest to terminate, and number three, is it the best interest of the child to be adopted by the person seeking to be. I will tell you that Judge Katz had specifically asked in the adoption case what this finding means, but... I don't want to go into the adoption case. I'm still concerned about the due process that somehow Judge Keevlin just kind of gratuitously threw this out to at the parties. And again, I don't think it has any substance to it. Have you seen that before? To be candid, no, Your Honor. Of course not. But again, I think it's still a supplemental. I don't think it's substantive. I truly don't believe that it's res judicata or that it's something that I could use in another case. I believe it is the other... It's part of an order. I mean, why don't you think that? Because I don't think that she had to find the parent unfit to award custody to Ms. Gregory. She may not have found it, but she did. Yeah. Therein lies the rub. That's right. That's the problem. So I believe that that's it. I think you covered questions I was expecting, unless you have any more questions. I want to just pick up on something you said kind of at the end. You agree that she did not have to make, or at least your argument is, that this unfitness finding was kind of a collateral thing, that the parenting order she entered had sufficient basis under the facts and the law as it stood. Is that your argument? Absolutely. I agree. I think once my client had the ability to seek custody because the child wasn't in the physical custody, as in Defoe and as in T.J. And also while I was researching this brief, I found the other court district case that had just come out pretty much stating that there are other factors. When we're looking at who's had custody of this child, it's who's taken them to their doctor's appointments, their education, all those things. I think once that occurred, then the court is just supposed to look at those 13 or 14 factors in allocating parental decision-making and parenting time. I don't think it was necessary for the court to find the eyewitness on it, but she did. Thank you. Thank you, counsel. Counsel? It's true that at certain points Mr. Wilkins, Ms. Banks and Mr. Hall did say that they wanted to have parenting time and parental responsibility with Ms. Gregory, but that was at the beginning of these proceedings. At the beginning of these proceedings, there was a restraining order entered preventing either of the other three parties from removing the child from Susan Gregory's care. And I think that that went a long way toward changing all their minds, and in fact at trial they all testified that if not granted primary themselves, it should be one of the other parties instead of her, that they had spent more time with the child and that they should have that to say. Thank you. Thank you, counsel. We appreciate the briefs and arguments. Counsel will take the case under advisement and issue a ruling in due course.